Would the clerk call the first case, please? 3-12-0-8-9-2. People of the State of Illinois. Everly and Dorin Durango v. Josue Valdez. Appellant by Santiago Durango. Mr. Durango, good morning. Good morning, Your Honors. Mr. Durango, may it please the Court, My name is Santiago Durango. I'm an Assistant Appellant Defender with the Office of the State Appellant Defender, and I represent the appellant, Josue Valdez, in this appeal. Your Honors, today I will be asking this Court to vacate the non-citizen defendant's guilty plea to burglary because he was not warned that he faced presumptively mandatory deportation by pleading to the offense of burglary. What happened in this case was that the non-citizen defendant, who is a national of the Dominican Republic, obtained a visa to come to the United States to marry an American citizen. He arrived in December of 2011. Approximately six and a half months later, he was charged with committing a burglary. He pled guilty to the burglary and was sentenced to three years of probation. He subsequently filed a motion to withdraw the guilty plea, arguing in part that the plea had not been knowingly made because he was not warned that by pleading guilty he faced presumptively mandatory deportation. The trial judge agreed that plea counsel had been effective in not warning the defendant that he would face presumptively mandatory deportation. But the judge concluded that the counsel's error had been cured by the Court's own admonishment that the defendant might be deported if he pled guilty. The judge denied the plea, the motion to withdraw the plea, and the defendant appealed. The judge's denial of the motion to withdraw the guilty plea requires correction, Your Honors. In Padilla v. Kentucky, the United States Supreme Court ruled that when it is clear from the immigration statutes that a guilty plea will expose a defendant to presumptively mandatory deportation, the defendant must be warned of this consequence. You know, what is the evidence that this defendant would have rejected the plea, and that would have been a rational decision under the circumstances, with the evidence about the underlying charge? I mean, with this plea, he was, it was probation? Yes, it was. Okay. And, but there was a, could be worse than that. So when you're opening up the plea, you're opening up quite a few different things, aren't you? Yes, Your Honor. And so how do we know that it would have been rational under the circumstances, and that's using the language of Padilla, for this person to have rejected that kind of plea under these circumstances, and also in light of everything that this trial judge said on more than one occasion? Yes. Well, the defendant was prejudiced in this case for two reasons, and the first reason is he had a very strong defense. If this matter had gone to trial, he could have raised marital privilege. The state's evidence essentially consisted of what his wife told the police, her family, and the neighbor. Asserting the marital privilege would have kept that, those statements out. The only evidence that would have been left would have been that she saw the defendant enter the house. So he had a strong defense to the charge if he had gone to trial, and he would have invoked the marital privilege. In addition, he may have rationally chosen to go to trial because he has a daughter here, so he may have gambled that the state would not have been able to meet the high burden of proving him guilty beyond a reasonable doubt. The strongest argument, however, is that had he invoked the marital privilege at a trial, it would have been very difficult for the state to prove him guilty, and the state in this appeal really does not contest that. I brought that up in the opening briefing, and in its brief, the state did not dispute that point. Mr. Durango, what is an ICE hold? An ICE hold is they will pick up, as I understand it, Your Honor, they will pick up a defendant. No, they will place the defendant on hold if it seems that the offense that he has been charged with will subject him to presumptively mandatory deportation. However, that is not enforced until the sentence is served. But it's an indication that somebody believes that this is mandatory deportation. Yes, as I understand it, and that plays into this case because there must have been a reason for the ICE, Immigration and Customs Enforcement, to pick up the defendant in this case after he served his probation. I've had another case before this Court, Jovita Guzman, where she was picked up after she served her probation and was deported. So as I understand it, it's an indication that the defendant, in their view, faces presumptively mandatory deportation due to the charged offense. And that would be the Immigration Service? The Immigration Service. Now, getting back to the ineffective assistance of counsel in this case, in Padilla, the Court ruled that a defendant, if the immigration statutes clearly indicate that a defendant will be exposed to presumptively mandatory deportation, due to the offense he's charged with committing, he needs to be warned of that consequence. In Padilla, the Court looked to Section 1227A of Title VIII of the United States Code. That section sets out the kind of crimes that expose aliens to deportation. In Padilla, the Court indicated that plea counsel needed to consult that section when their alien client is pleading guilty. Looking at that section in this case, if counsel would have looked at the section as required by Padilla, he would have noticed that there are two subsections that may have applied to the defendant. The first is the aggravated felony by burglary section. Under that section, if the alien defendant commits a burglary and he receives a sentence that exceeds one year, he is deportable. The section at this juncture does not apply in this case because the defendant was sentenced to probation. The other section that clearly applies in this case pertains to crimes of moral turpitude. Under that section, if the alien defendant commits a crime within five years of admission, and the crime may be punished by a sentence that exceeds one year, and the crime is one of moral turpitude, the alien is deportable. In this case, the charged burglary occurred within five years of the defendant's admission. And burglary is a Class II felony that may be punished by a sentence in excess of two years. Why is it moral turpitude? It's moral turpitude, Your Honor, because Illinois historically has treated burglary as a crime of moral turpitude. What does that mean? Normally you think about sexual offenses. Just about every offense involving dishonesty, fraud, something that is morally objectable is a crime of moral turpitude. In fact, in Judeline v. Holder, the Supreme Court of the United States noted that basically just about any crime is deportable under the moral turpitude crime because it encompasses so many crimes. So in this case, as a matter of general knowledge... What's the federal law, immigration law, on this kind of conviction in state courts and whether it's moral turpitude? For moral turpitude, the case law, they generally look to how the state courts have interpreted the offense. In Illinois, as I mentioned, it has traditionally been considered a crime of infamy, and it was statutorily a crime of infamy which encompasses moral turpitude. And as a result of that, the Board of Immigration Appeals back in 1980 confirmed that the Illinois crime of burglary is a crime of moral turpitude. And it would not have taken much effort for counsel to discover this simply by looking at the annotations of the burglary statute, if he did not know so as a matter of common knowledge. I mean, you don't expect public defenders to become immigration experts, do you? No, Your Honor, it required no immigration expertise to discover this, that burglary is a crime of moral turpitude in Illinois. Now, Strickland v. Washington requires counsel to conduct a reasonable investigation. A reasonable investigation, simply looking at the annotations of the burglary statute, would have quickly revealed that burglary is a crime of moral turpitude in Illinois. The federal courts also have considered whether generic burglary, they usually look to state law, but have also considered whether generic burglary, which is essentially what the Illinois statute is, constitutes moral turpitude. And in two of the cases cited by the state in its brief, they have noted that generic burglary is a crime of moral turpitude. So in this case, simply by looking at the immigration statute, as counsel should have under Padilla, he should have noted that the defendant was charged with committing an offense within five years of his admission, that the offense he was charged with committing was punishable with a sentence exceeding one year, and as a matter of general knowledge or reasonable investigation, he could have easily discovered that it is a crime of moral turpitude. Therefore, he should have warned Mr. Valdez that by pleading guilty to burglary, he was exposing himself to presumptively mandatory deportation. He did not do so, and he was ineffective on that basis. And how do you respond to the state's argument that this was cured by the judge's admonitions? Now, the judge's admonitions were not adequate, and that is a problem with the statutory admonitions in Illinois. The judge informed the defendant that he might or he might not be deported, when in fact the defendant needed to be advised that his deportation was presumptively mandatory, essentially that he would be deported. So telling him that he might or might not is not adequate under Padilla. I think that, if I remember correctly, you discussed in your brief the fact that the attorney general no longer has discretion to exempt. It's very limited and it does not apply in this case, Your Honor, yes. Primarily because the defendant was not in the country long enough for any of the exemptions to apply. So the judge's admonitions did not cure counsel's error. And the defendant was prejudiced by this, because as I mentioned previously, he had a strong defense to the charge, and he has a daughter in the country. Accordingly, the plea was constitutionally infirm under Padilla. And the defendant, therefore, requests that this court vacate his guilty plea to perjury and remand this cause for further proceedings. If the court has any questions, Ms. Jones-Shaw, I'd be more than happy to try to answer them. Thank you, Mr. Durango. While Ms. DeMichael is making her way to the podium, I need to cure something. The third person on our panel for this case is Justice Holdridge. He's ill this morning and will not be here for any of the cases today, as I understand it. He will be listening to the tapes of the arguments and will participate in the conferencing. So it will be a decision by three judges. Ms. DeMichael, good morning. May it please the court. Counsel? Lord DeMichael, on behalf of the people. At issue in this case is really the risk of defendants receiving possibly bad advice from defense counsel who might not know very much about immigration law. Defendant argues that counsel had a duty to inform him that he would be deported as a result of his plea. He acknowledges that proper admonitions by a trial judge can cure a deficiency in counsel's advice, but argues that the admonitions in this case didn't do so because they weren't proper admonitions. I'm sorry. Wasn't his argument that it could cure if it was a crime where it couldn't be clearly determined what the outcome would be? As I understand the argument that if the trial judge had given proper admonitions, it could have been cured. But I understand defendant to be arguing that the admonitions by the trial judge weren't proper because the trial judge just said he could be deported and the trial judge didn't say he would be deported. What the people's argument is is that those admonitions by the trial judge did cure the error because they were proper because under PDEA it wasn't clear what the consequences would be. And I'm not even sure that he was deportable, even under the sections discussed in both of our briefs. There's two main problems with defendant's argument. First, that it's not true that he faced mandatory deportation. I don't believe he faced mandatory deportation. In defendant's opening brief, first I'd like to note that defendant's argument below was slightly different. Defendant argued that his counsel told him nothing, not that his counsel needed to tell him that he would be subject to mandatory deportation. So the parties were really more discussing whether he had to be told something than whether he had to be told deportation was mandatory. His counsel didn't tell him anything, did he? So the trial judge found after an evidentiary hearing that his counsel told him nothing. Even though in the plea hearing they had discussed, his counsel had stated he may be facing immigration issues and he also said, I told him I don't advise him on that other than to tell him. And then the trial judge interjected of a conviction and he said yes. So although there's that indication in the record that maybe something was said, the trial judge ultimately found that he was told nothing by his counsel. Not that he was told the wrong thing, but that he was told nothing. In defendant's brief, his opening brief, he argued that he faced mandatory deportation. He argued it was clear he faced mandatory deportation. Under two grounds, he argued that it was an aggravated felony and so that was clear that he faced mandatory deportation. Well, now by the time the reply brief comes, he's arguing, oh, actually, no, it wasn't an aggravated felony. So, well, the opening brief said, yes, this is clear, this is an aggravated felony that subjects him to mandatory deportation. Now that doesn't. And the other ground raised was it was basically half of the crimes involving moral turpitude section. The opening brief didn't even mention crimes involving moral turpitude, which I'll call CIMTs. It just stated because he was subject to a crime that could have a sentence of a year or longer, that he was mandatorily deportable and didn't even address the CIMT issue. Now in the reply brief, the argument is that, oh, this is clearly a CIMT. I don't believe it is a CIMT. It's certainly not clear from the face of the statute how to determine what a CIMT is. There's no statutory definition. There's no list of what crimes constitute CIMTs. This is in contrast to the subsection at issue in PDEA, which was just controlled substances, and there is a definition for controlled substances in the federal statutes. Moreover, there's two different approaches that could be used to determine whether it's a CIMT. There's the categorical approach and the modified categorical approach. And I'm not sure this is a CIMT under either approach. The categorical approach is discussed in the Hernandez-Cruz case. Defendants' reply brief said that the state didn't cite any case or burglary of a building with intent to commit a theft as not a CIMT. I believe Hernandez-Cruz is such a case. The Hernandez-Cruz case discusses how a court should look only to the elements of the statute, and where the elements of the statute don't amount to a CIMT, then it's not. So not looking at the underlying conduct. And in the Hernandez-Cruz case, because it wasn't a residence at issue in that case, the court found that it wasn't a CIMT. Now this case is not distinguishable on the grounds that it wasn't a residence, because in this case he was just charged with the building, and the building was unoccupied. That's in the factual basis. So he wasn't charged with the residence, and the factual basis didn't include residence either. It included that the building was unoccupied. Moreover, under the modified categorical approach, this is the Cuevas-Gaspar case cited in the people's brief. I said that maybe he would be deported, deportable for a CIMT under this case. I'm not sure anymore looking at it next to Hernandez-Cruz, because the Cuevas-Gaspar case also included in the factual basis that it was a residence, whereas in this case this structure was a building and it was unoccupied. The second problem is that even if defendant did face mandatory deportation, after looking through all those different approaches, Padilla still doesn't require he be told deportation was mandatory in this case, because that result is far from clear from reading the statutes. Under Padilla, what advice is required depends on the specificity and the clarity level of the statute. Padilla relied on the fact that the statute at issue there, which was 1227A2B, did not concern a broad classification of crimes, but rather specifically concerned only controlled substances. For example, there's other specific subsections dealing with other specific crimes, like E deals with domestic violence, stalking, and child abuse only. Subsection A, by contrast, does deal with a broad classification of crimes. It's even titled general crimes. The Padilla majority acknowledged that the law is not succinct and straightforward in many of the situations mentioned by the concurrence, and the concurrence was specifically concerned with aggravated felonies and CIMTs. So in responding to those particular concerns, the majority acknowledged that the law is not clear and says if the statute isn't clear from the face of the statute alone, that all the advice is required is that there's a risk of deportation. See, that's where I have a question. In Padilla, the court specifically held that to satisfy the requirement of being a competent attorney representing a defendant, a citizen or not, they held that the counsel must inform the client whether the plea carries a risk of deportation. So we have in this case the finding that counsel said nothing. So counsel did not satisfy that requirement. Now the question is, can it be satisfied because of all the questions the judge asked? But in Padilla, in footnote 15, there's an indication that in Kentucky, the trial courts were mandated to say there's a risk of immigration consequences. So in Padilla, the trial judge, I mean they don't go into it, but the trial judge, based on the information in the footnote, didn't the trial judge say everything the trial judge said in this case? Basically, you know, that there could be a risk of deportation because that's part of their, you know, they found in footnote 15, we find it significant that the plea form currently used in Kentucky courts provides notice of possible immigration consequences. So that was part of the plea in the Kentucky court. So the difference here would be in Padilla, they found that the defendant was clearly, from the face of the statute, subject to mandatory deportation. So if the form just said he could be deported, then the form wouldn't have told him the advice that Padilla says he needs to be informed of. In this case, however, the consequences weren't clear, so all Padilla would require would be he could be deported, the risk of deportation advice, and that advice was given in this case. But, and they say in Kentucky they gave it right, there's a possibility of deportation, but they still said it was the attorney's responsibility. The attorney did have the responsibility, but under the Hall case, that deficiency can be cured by proper admonitions by the trial judge. The admonitions given in this case were proper, even if in Padilla, the trial judge's admonition that he could be deported wasn't good enough because he would be deported from the face of the statute. As far as prejudice, what's your argument with regard to the prejudice claim? I mean, the prejudice is, look, they had a good defense. They couldn't have used the evidence, really, from the wife. The state's argument with regard to prejudice is, if his argument is, I would not have pled guilty if I wasn't aware that I could be deported, the trial judge informed him he could be deported, so he did know that, so he wasn't prejudiced. As far as the strength of the evidence, the people don't need to even reach that. The people acknowledge there's cases even saying with strong evidence it can still be a rational decision to not plead guilty. I'm talking about applying the Strickler test. He's arguing that prejudice could result in this case because, given the fact that you couldn't use the evidence, so they'd have a defense, a viable defense, and the fact that the person would have every reason to want to stay because of the daughter. And obviously prejudice has an impact, the Strickland prejudice test has an impact on Padilla. They remanded it in Padilla for a determination about prejudice, didn't they? They did remand for a determination of prejudice because in that case he wasn't told he would be and he would be. In this case he was told he could be and he could be. So the decision calculus, am I going to plead guilty based on what I know about the immigration consequences? Well, he did know what he needed to know about the immigration consequences based on what the trial judge told him. Assuming that you're right about whether it's mandatory or not. Well, at the very least I'd say it's certainly not clear from the face of the statute because even defendant switched positions between his opening brief and his reply brief as to whether it was an aggravated felony and didn't mention a CIMT in the opening brief, did in the reply brief. It requires case law. Also it's not whether it's a matter of Illinois law, it's how it's treated under federal law because this would be a deportation under federal law. The different states define crimes differently so it can't be said that, oh well, we know this is this in Illinois generally so it always must be for federal immigration law purposes. There's just too many... So if there's an uncertainty, I mean right now there's no certainty on this issue based on your argument, right? I don't believe there is a certainty. I mean you can't say with certainty he's not going to be deported. I'm not sure whether he's deportable as a result of this defense. So there's uncertainty. So if there's a situation of uncertainty, where should this court fall with regard to the Strickland test and the circumstances of this case? Well, if there's a situation of uncertainty then defendant's brief argues he had to be told he would be deported but if it's uncertain then that would be affirmatively bad advice because if he's not going to be deported or might not be deported as a result of the defense, requiring counsel to tell him he would would be requiring counsel to give him bad advice. Well, ignoring their brief, Padilla says the counsel has to talk about the risk of deportation. Yes, and he should have talked about the risk. I mean you're stuck with that fact. Yes, yes. I'm stuck with the fact that the trial judge did ultimately find that he didn't advise him of the risk. Even though there is indication that he did say before the plea occurred, I'm aware he has immigration issues, I'm aware he's got the divorce case pending, I've told him I don't represent him on those things. The ICE hold also was apparently in place at the time of the plea and maybe that could have been because it could have been an aggravated felony if he had been sentenced to a year or more but then he wasn't. Or it could have been because I think there was the divorce proceedings pending to stay as a resident, there's provisions over how long the marriage has to last, so I don't know whether it related to that, I just don't know. There's just been no showing on that front what the ICE hold meant. If I can go back to the Supreme Court's footnote about Kentucky's rules, I would think that a trial judge could try to do the best he or she could do to try to make sure there's a valid plea agreement. So here you've got a trial judge trying to make sure that the risk of deportation is made aware of that, which typically when the trial judge is he or she is making those kinds of admonitions in a whole variety of different situations. Usually that cures any problem. Does the footnote in Padilla negate that sort of general principle? Because I think it's fair to say as a general principle, in many situations and in many kinds of circumstances, a trial judge can cure an alleged problem from an attorney. You know, all kinds of situations, and we see that in a myriad of cases. But when you've got in Padilla the fact that Kentucky did talk about the risk of deportation and you've got the specific requirement in Padilla that the attorney talk about the risk of deportation, and I understand their argument and their brief that you're pointing out that you're pressing, and then with the finding of the trial court here that the attorney did nothing, does that become some kind of, once that fact is established, it's obviously not a per se rule because you still have to establish prejudice, but that's the other question, whether there's prejudice. Well, I know that in Padilla the allegation was made that defense counsel affirmatively told him he would not be subject to deportation, or he probably wouldn't because he'd been in the country so long. So in that instance where the attorney has given him affirmatively bad advice, and the trial judge didn't give correct advice either because he just said could, and Padilla case found he needed to say would, that's different than when the attorney says nothing and the trial judge says the right thing. Silence is different than affirmative misadvice. And they make a distinction between commission and omission in Padilla. They talk about that, but I guess because that would seem to be a very persuasive argument, that's distinguishing Padilla from this case. But then I'm just troubled, and this is the reason I'm asking and dwelling on this, is that after they talk about all this and the circumstances, then they say to satisfy this responsibility we now hold that counsel must inform her client whether his plea carries a risk of deportation. It's not mandatory deportation, it's just a risk. So does that mean if that's not satisfied by that attorney, and if it can't be cured by the trial court, and again looking at this footnote, does that mean that now you go right into the prejudice prong of Strickland? Because that's the case, then we're looking at the important issue in this case is their prejudice. If it couldn't be satisfied by the trial judge curing it, then you look at whether his decision to plead guilty would have been affected by the lack of that knowledge. And it's true that in recent cases from this court, there's Guzman Ruiz, which says even if you're facing a super long term in prison and the evidence against you is really strong, there can still be a rational decision to plead guilty. I would note, however, that on C-38 and C-39 in the motion, defendant didn't allege in the motion that he wouldn't have pled guilty if he knew the deportation consequences. That allegation isn't made in the motion. I don't remember whether it was made at the evidence hearing or not, but it's not in the motion. So if the decision wouldn't be affected by it, that's what matters. So you're arguing sort of a waiver or forfeiture of that argument? I don't think I understand what you're asking. Are you saying the defendant waived that aspect of the argument? Well, defendant certainly didn't. Defendant also cited Hall and agreed that prejudice could be cured by proper admonitions. He didn't say that even if the advice was proper, it couldn't be cured by the admonitions in his brief. So under 341H7, that would be an argument that was waived. Ms. Michael, you talked about distinguishing two of the federal cases on the grounds that the place was not a residence. This was not a residence? It's charged as a building. It's not charged as a residence. The statute in Illinois doesn't require that it be a residence, and the factual basis included the fact that it was unoccupied. Unoccupied for what period of time? That moment or? I'm not sure, but he isn't established. If the elements of the statute or the factual basis don't include that it is a residence, then it doesn't seem to fit with the CIMG there. Although older case law might suggest that it doesn't have to be a residence. So if nothing, I'm just still really confused as to whether it is or not, whether it matters that it's a residence or not. There's an uncertainty that we're talking about. I think under Hernandez-Cruz, which is one of the more recent cases, is 2011, and Lopez-Penaloza, that because it wasn't an element that it be a residence, then it doesn't count as a CIMG, but I think there is older cases where it doesn't matter if it's a residence or not. But I think maybe something had changed between 1950s cases and the 2011 cases. Wouldn't it seem like moral turpitude would be something that would be related to the perpetrator and not the location? I mean, if dishonesty is moral turpitude, it's dishonest whether what you're robbing is a residence or a building. So whether it's a crime of dishonesty or not actually gets more complicated than it would seem because theft would be a crime of dishonesty because you're saying this thing is mine when it's not. Burglary includes the intent to commit a theft, but having the commission of the theft occur is not an element of the burglary. Okay, but the dishonesty basically is what's involved with the moral turpitude. It certainly can be, but I don't think it's necessarily an element of every burglary. Okay. But if you're impeaching by prior convictions, Yeah, this is a difference between the federal law and the Illinois law. So I think that the federal law says crimes of dishonesty are one way. Illinois law certainly says that it is a crime of dishonesty for impeaching purposes. Whether it's a crime of dishonesty such that it becomes a crime of moral turpitude for the purposes of the immigration statute, that's another question. But for Montgomery, this is a crime that you could impeach with because it goes to your credibility and dishonesty. Yes, yes. And so if we're following what we in Illinois follow in impeachment circumstances, this would certainly fit that. It would fit that in Illinois for impeachment purposes, but whether moral turpitude, crime of moral turpitude for the immigration statute includes all crimes of dishonesty for the purposes of the federal statute and how the federal law interprets what is a crime of dishonesty is a whole other... I mean, Illinois, it's been for a long time. Yeah, it would be in Illinois. Very broad. Yes, I would agree. If my memory serves me correctly, the only case I can remember that remotely didn't fit into that category, and I don't know how you rationalize this, is trespass to a vehicle. Criminal trespass to a vehicle. That misdemeanor somehow can't be used as impeachment. But the rest of them, everything else... I would agree. In Illinois, that is absolutely considered a crime of dishonesty for the purpose of the impeachment statute. I don't believe that the federal law is the same or clear on this. I think there might even be a conflict. You're talking about the federal immigration? Federal immigration law, yes, yes. So that is what it matters for whether it's a... That brings me back to my question about uncertainty. Where should you fall if there's an uncertainty? If there's an uncertainty, then the trial judge's advice is absolutely correct, that he was told there could be a risk of deportation. And even the suggestions that when the defense counsel told him, I told him I don't represent him on immigration, I told him I don't represent him on the divorce, that, yeah, whether he was... If he needed to be told that he could be deported, he was told he could be deported. If there's uncertainty, could is good enough. If it's clear, then it's got to be would. He's got to be told he would be if it's clear. But I think it's got to be clear from the face of the statute, as described in Padilla. And sure, there can be federal definitions for pieces of things that are in the statute, but looking at extensive case law and questions of is this this, is this this, is this this for this, or is this under state law, federal law review, then that's not at all clear from the face of the statute. So you're saying we can't look at the case law and try to determine whether there's more to the position? I believe that Padilla discussed the difference between subsections  It said that it did not concern, quote, classifications of crimes, but, quote, specifically concerned only controlled substances. And that would be subsection A2B. I'd note the other subsections, like E, F, there's additional ones, do name specific crimes. But by contrast, subsection A is general crimes. And the concurrence was specifically concerned with CIMTs, aggravated felonies, and the majority appears to have believed themselves to satisfy themselves as addressing the concurrence's concerns by saying if it's a broad classification of crimes, that's a different matter. If it's a broad classification of crimes, then just advising of the risk is good enough. So crimes of moral turpitude, aggravated felonies, those are broad classifications of crimes. They're not like just controlled substances. They're not like domestic violence, stalking, child abuse, which is an E. So for subsection A, I think being told of a risk is sufficient. You referred to the allegals writing in this Padilla case. But they make much of that this is a horrible case for a variety of reasons, including that requiring the trial counsel to do this when immigration law is not very clear in all kinds of areas, requiring defense counsel to become immigration experts is opening a whole different can of worms for the courts. That's part of the problem they had with the majority of the position. And they also seem to think that one way the court should have gone was there could have been a remedy by having trial judges say things. So I guess it's concurrence, isn't it? Concurrence in part or dissent. That suggestion is what the trial judge says doesn't matter in Padilla. I think what the concurrence is saying is that could should always be good enough and would shouldn't be required ever. But I believe that the majority discusses the concurrence enough to say, look, okay, could will be sufficient in a wide variety of circumstances. If it's a broad classification of crimes, if it's not clear from the face of the statute, if the statute isn't, I believe they said succinct and specific, then I think the majority believes they did address that by making the differentiation between, look, this is just controlled substances versus this is not broad class. And CIMTs and aggravated felonies would be broad class. The reason I'm asking the question is not on that aspect. It's on the aspect of what Alito was saying is that this court is imposing a duty on the defense attorney. What the trial judge does doesn't matter. Well, I think under Hall, the Illinois case in Hall, what the trial judge does does matter. If the trial judge just gives the correct advice, it can cure it under Hall. And I didn't understand defendant's brief type in arguing that it didn't matter if the trial judge also gave him the right advice because counsel had to do it too. That's not how I understood his brief to be arguing. I'm not talking about his brief. I'm talking about Padilla. Well, Padilla wasn't faced with this question either because Padilla, he needed to be told he would be deported, and all he was told was could, and also his counsel told him he wouldn't be. So there's more pieces going on there. Counsel's advice was wrong. The judge's advice was also insufficient. So they just weren't faced with this scenario. Yeah, what I'm referring to is in Alito's statement, the majority seeks to downplay the dramatic expansion of the scope of criminal defense counsel's duties under the Sixth Amendment by claiming that this court applied Strickland, you know, and then saying that it's now the duty of the defense counsel to do all this stuff. Yeah, well, there certainly is the duty on defense counsel too. The people's argument is it can be cured by what the trial judge does. Thank you. Thank you, counsel. Thank you, Your Honors. Mr. Durando, any rebuttal? Thank you, Your Honors. Your Honors, this case is not that complicated. The FIDEA counsel had a duty to look at the statute, section 1227A. If he had looked at the statute, which he did not do, he would have seen that his client, Mr. Valdez, was charged with committing an offense within five years of his admission, that the offense, burglary, could be a sentence that exceeded one year, could have been imposed on his client. And he should have known or could have easily discovered that burglary is a crime of moral turpitude. It's that simple. He didn't do that. This talk about whether there's a categorical approach in the federal law to whether to try to determine whether a crime is a crime of moral turpitude, that does not apply here. That, in Illinois, it's established that burglary is a crime of moral turpitude. The federal courts look to state law. The case is cited by the state. In those cases, the courts look to state law. A categorical approach comes in when there's a split in the statute and there's a possibility that one part of the statute may state an offense for crimes of moral turpitude and another part of the statute may not state a crime that's a crime of moral turpitude. We don't have that here. We have burglary. There's no split in the statute where you may have one part of the statute be a crime of moral turpitude and another part not be a crime of moral turpitude. We have one offense that has a long history of being treated as a crime of moral turpitude. So it's not difficult. This case is not as difficult as the state is making it out to be. Counsel had a duty to look at Section 1227A, be it all counsels with alien defendants who are contemplating a guilty plea under PDEA need to look at that section. And this lawyer did not do so. The judge's admonishments did not cure the counsel's mistake because by simply looking at the statute, which is what PDEA requires, it's evident that the defendant faced presumptively mandatory deportation because he committed a crime and he could have been sentenced to a sentence in excess of one year. You know, it seems to me your argument is the very argument that Alito is making that this is, you're trying to adopt a rule that would mean that everybody has to be like an immigration expert in a land of uncertainty on immigration law and that everything can be open season. I'm not going that far, Your Honor. I'm saying that you're not going that far. I'm saying that in this case, what the court in PDEA ruled is that if it's clear from the statutory language. And in this case, I'm saying that it's clear from the statutory language. I acknowledge that there may be situations where it is not clear whether a crime is one of moral turpitude or not or whether a crime may be presumptively subject to mandatory deportation. But this is not one of those cases. This is a case where simply by looking at the statute, section 1227A, you can see that the defendant was charged with an offense that was alleged to have occurred within five years of his admission, that the offense carried a possible sentence exceeding one year, and that burglary, as a matter of common knowledge and if not a matter of common knowledge, with a little investigation as required by Strickland, would have revealed to counsel that it is a crime of moral turpitude. So it would have been simple for counsel to look at the statute, which he didn't even bother to do, and then just noting these factors, advise his client that if you plead guilty, you may face presumptively mandatory deportation. Opposing counsel was suggesting that Hall would still be a valid defense where you've got the trial judge doing the informing. Yes. And the question is, does Hall survive after Padilla? I think Padilla controls over Hall, Your Honor. I mean, Hall's an 05 case. Yes. Padilla's a 2010. Yes. Yes, Padilla controls over Hall. But how does Padilla negate Hall? Because, as you mentioned, Your Honor, in Padilla, the court indicated that counsel had to advise his client of the risk. And whether the court did so or not, apparently, was of no consequence, because, as you noted, in Kentucky, the advice given to the defendant was similar to the advice the court gave to the defendant in this case. But this court does not even need to reach that issue, I believe, because in this case, counsel did not look at Section 1227. And if he would have looked at the plain language of the section, it would have indicated to him that his client had committed a crime of moral turpitude under the three prongs of that subsection. And therefore, he should have warned his client that by pleading guilty, he faced presumptively mandatory deportation. Now, all your arguments go to the first part of Strickland. You know, so far, a lot of the arguments here and more today. Yes. But if you get to the second prong that they remanded Padilla for, you know, the prejudice prong, where we have a legion of cases, and I'm not using that word inappropriately, where there were all kinds of consequences. And they said, oh, that didn't show any prejudice because, you know, he was pleading guilty, you know, facing this or that. I mean, you've seen those cases that they deny the Supreme Court of Illinois has denied relief to people trying to withdraw their guilty plea, saying they didn't meet the second prong of the Strickland test. It didn't show prejudice under some very dire consequences. So, you know, what do you say to that? That you can't fit under that, all those cases, you can't fit the prejudice prong of this test? In this case, I think the prejudice prong is easily met, Your Honor, because the defendant has such a strong defense to the charge. If the matter had gone to trial, the defendant could have invoked a marital privilege. At that point, it seems to me that the state would not have been able to meet the elements of the charge. And the state does not dispute that in this appeal. So it could have, the state could have easily, I'm sorry, the defendant, I believe, easily met, could have easily met the prejudice test in this case. In addition to the fact that his daughter, you know, the daughter here. So there's a rational basis for him to have gambled under trial in this case. Thank you. Your Honors, if you have no further questions, I have concluded my argument. I would ask the court to reverse, pardon me, to vacate the defendant's guilty plea and to remand his cause for further proceedings because he was not remarkably admonished under Padilla. Thank you, Your Honors. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement in conjunction with Justice Eldridge and we'll render a written decision as quickly as possible. The court will now stand in brief recess for a panel change.